Laura Kabler Oswell (SBN 241281)
SULLIVAN & CROMWELL LLP
1870 Embarcadero Road
Palo Alto, CA 94303
Telephone:     (650) 461-5600
Facsimile:     (650) 461-5700

Garrard R. Beeney
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone:     (212) 558-4000
Facsimile:     (212) 558-3588

*Attorneys for Plaintiff*
VIA LICENSING CORPORATION

[*Additional counsel on signature page*]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIA LICENSING CORPORATION,<br><br>　　　　　　Plaintiff,<br><br>　　　v.<br><br>HAIER AMERICA TRADING, LLC<br><br>　　　　　　Defendant. | Case No. 17-cv-03485<br><br>**COMPLAINT FOR BREACH OF CONTRACT SEEKING DAMAGES AND SPECIFIC PERFORMANCE**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff VIA LICENSING CORPORATION ("Via" or "License Administrator"), by and through its undersigned counsel, for its Complaint in this action, alleges as follows:

**NATURE OF THE ACTION**

1. This is a breach of contract action brought by Via stemming from Defendant's breach of an Advanced Audio Coding Patent License Agreement (the "AAC PLA"), in which Via seeks damages and specific performance. Plaintiff Via is a patent pool administrator; it acts on behalf of a group of owners of essential AAC patents to license their AAC patents to parties that manufacture, sell, or supply products incorporating AAC technology as described herein ("AAC Technology"). Defendant Haier America Trading, LLC ("Haier," "Licensee," or "Defendant") is a New York company that sells products that use AAC Technology. In 2012, Via and Haier entered into the AAC PLA, which Haier subsequently breached on numerous occasions. Via brings this action to obtain damages—including royalties, interest payments and attorneys' fees as provided by the AAC PLA—for Haier's continuing breaches of the AAC PLA. Via also brings this action to obtain specific performance of Haier's reporting obligations under the AAC PLA.

2. Effective September 18, 2012, Haier entered into the AAC PLA with Via. In exchange for the rights to various AAC patents licensed under the AAC PLA, Haier promised to make royalty payments to Via and to provide Via with quarterly reports specifying, among other things, the quantity and description of products that include AAC Technology sold or otherwise supplied by Haier in a given calendar quarter ("Quarterly Report"). Under the AAC PLA, Via has the right to audit Haier's books and records, so that Via can ensure the accuracy and completeness of Haier's reporting and verify or determine payments due under the AAC PLA.

3. Haier has repeatedly breached the AAC PLA since it was executed by failing to (i) submit Quarterly Reports; (ii) cooperate with Via to conduct an audit of Haier's books and records; (iii) report to Via millions of units it sold incorporating AAC Technology; and (iv) pay the applicable royalties due on such units. Since at least September 2015, Via has patiently attempted to work with Haier to bring Haier's reporting and payment obligations in

compliance with Haier's contractual obligations, but despite Via's best efforts to resolve this matter amicably, Haier has refused to provide *any* Quarterly Reports beginning with the report for the second quarter of 2013, due on July 30, 2013, and to pay *any* royalties or interest due on the unreported units it sold, as it is required to do under the AAC PLA.

4. Haier also breached the AAC PLA by failing to pay royalties on certain products it sold to certain of its customers who are themselves Via licensees. Under the AAC PLA, a licensee may agree with its customers and suppliers who are also licensees that, as an exception to the reporting and payment obligations of each licensee, such other licensees may inform Via by providing written notice specifying which of the licensees has agreed to take over the reporting and payments of some or all of the other licensees' products "Customer Products"). Via makes this exception as a courtesy to its licensees. However, Via does not have the visibility into the private business transactions of other companies. Therefore, the AAC PLA makes clear that the licensees who make the original sales under such an arrangement—like Haier here—remain responsible for the license fees due for Customer products they have sold if the electing (or purchasing) licensee fails to pay the applicable royalties.

5. Haier also breached the AAC PLA by (1) failing to report or pay royalties on products incorporating AAC Technology that were sold prior to the effective date of the AAC PLA ("Past Practice") as required under the AAC PLA and (2) refusing to provide data or documentation concerning its Past Practice to auditors pursuant to the audit clause in the agreement.

6. The conduct described above and more fully below, constitutes a clear breach of the unambiguous provisions of the AAC PLA.

## PARTIES

7. Plaintiff Via is a Delaware corporation licensed to do business and doing business in the State of California with its principal place of business at 1275 Market Street, San Francisco, California 94103. Via is in the business of, among other things, developing and administering patent pool licensing programs, otherwise known as "patent pools" as more fully described below.

8. Defendant Haier America Trading, LLC is a New York corporation, with its principal place of business at 1800 Valley Road, Wayne New Jersey 07470. On information and belief, Haier is primarily engaged in the wholesale distribution of radio and television receiving sets, other household electronic sound or video equipment, self-contained air conditioning room units, and household electrical appliances. Many of Haier's products benefit from and incorporate AAC Technology. On information and belief, Haier sells and distributes its products, including those incorporating AAC Technology, in this judicial district.

## JURISDICTION AND VENUE

9. This Court has diversity jurisdiction over each of these claims pursuant to 28 U.S.C. § 1332 because the citizenship of the parties is diverse and the matter in controversy exceeds $75,000, exclusive of interest and costs.

10. Venue and personal jurisdiction over Haier is proper in the Northern District of California under 28 U.S.C. §§ 1391(b)-(c), for the reasons set forth above, and independently pursuant to Section 9.9 of the AAC PLA, in which Haier agreed that "[t]his Agreement shall be deemed to have been made and entered into in San Francisco, California. The Parties hereby submit to the jurisdiction of, and waive any venue objections against, the United States District Court for the Northern District of California, San Francisco Division and the Superior Court of the State of California, San Francisco County, in any litigation arising out of the Agreement."

## FACTUAL BACKGROUND

11. MPEG Advanced Audio Coding is an audio compression technology first identified within the MPEG-2 specification by the International Organization for Standardization ("ISO") and the International Electrotechnical Commission ("IEC") in 1997 (known as ISO/IEC 13818-7 "Information Technology—Generic coding of moving pictures and associated audio information—Part 7: Advanced Audio Coding"). MPEG Advanced Audio Coding was designed to provide high-quality audio at lower bit-rates than previous audio compression formats. As a consequence, devices that employ AAC Technology can offer high-quality audio while, among other benefits, saving transmission bandwidth, battery life, and memory space.

12. After the publication of the MPEG-2 specification, MPEG Advanced Audio Coding was extended within the MPEG-4 specification to include additional technologies. The extended MPEG Advanced Audio Coding technologies are described along with other audio codecs in ISO/IEC 14496-3 "Information Technology—Coding of audio-visual objects—Part 3: Audio."

13. Because of its benefits, AAC Technology has been widely adopted in the marketplace. It is utilized in numerous applications, including broadcast, streaming, telecommunications, automotive, and personal/portable media applications. AAC Technology is implemented in cellular phones, televisions, digital radios, game consoles and many consumer electronics products, including the Apple iPhone, iPod, iPad, Apple TV, and Apple Watch; the Nintendo Wii and 3DS; Microsoft's Xbox, Lumia, and Nokia branded phones, Sony's PlayStation 3, PlayStation Vita, TVs, cameras, portable music players, and tablets; BlackBerry phones and tablets; the Amazon Kindle Fire; the Roku Digital Media Player; Nikon cameras; and many other consumer electronic devices. AAC Technology is also implemented in various PC-based products and platforms, including Microsoft Windows; Apple OS X and iTunes; Adobe Flash; and RealNetworks' RealPlayer. Currently, there are more than 750 users of AAC Technology which honor their intellectual property obligations by licensing patents essential to AAC Technology through the AAC PLA.

14. Via is a patent pool administrator. As a patent pool administrator, Via offers to the marketplace licenses to patents essential to certain standardized technologies. The Via pool licenses efficiently combine in a single license patents from multiple owners at a single reasonable royalty as an alternative to licensees entering into multiple bilateral licenses with individual patent owners. The Via pool licenses, including the AAC PLA, provide in a single transaction rights to use essential patents which, without a license, would be necessarily and unavoidably infringed by the incorporation of the patented technology into a product for sale—*i.e.*, the practice of the applicable standard such as AAC, without a license, would infringe the essential patents which are licensed. The essential patents licensed through Via's patent pools are owned or controlled by entities that participate in Via's patent pools as licensors. The

1  licensors authorize Via to license essential patents on their behalf to entities that practice the

2  standardized technology.  All patents licensed through the AAC PLA have been or are members

3  of patent families that have been reviewed by an independent expert who has determined that the

4  patent or a patent in the patent family is essential to AAC Technology.

5     15.    One of the patent pools that Via administers is the AAC Patent Licensing

6  Program.  The AAC PLA provides licensees with patent rights to licensors' essential AAC

7  patents ("Essential AAC Patents") that read on the AAC Standard as defined in the AAC PLA.

8  The AAC Patent Licensing Program provides a convenient and cost-effective way for

9  companies, such as Haier, to acquire rights to practice the Essential AAC Patents from many

10 patent owners in a single transaction.  The AAC PLA also provides a level playing field among

11 users of AAC Technology because the same terms are available to all licensees.  Users of AAC

12 Technology that either are unlicensed or do not wish to enter into the terms of the AAC PLA

13 may, at their discretion, negotiate and enter into bilateral licenses with essential patent owners.

14 Those who refuse either to enter into and abide by the terms of the AAC PLA or enter into

15 bilateral licenses—and those such as Haier who refuse to honor the terms of the AAC PLA—

16 compete unfairly with those users of AAC Technology that honor their intellectual property

17 obligations.

**The AAC PLA**

19    16.    On September 18, 2012 (the "Effective Date"), for valuable consideration,

20 Via and Haier entered into the AAC PLA, which sets forth the terms and conditions pursuant to

21 which Via licensed to Haier rights under the Essential AAC Patents.  The AAC PLA is attached

22 hereto as Exhibit A.

23    17.    Via is identified as the "License Administrator" or "Via" and Haier is

24 identified as the "Licensee" under the AAC PLA.

25    18.    Section 1.16 of the AAC PLA defines "Licensed Product" in pertinent part

26 as follows:

27    (a) [A] complete (or substantially complete), ready-to-use End User decoding
         and/or encoding device or software, the making, using, importing, Sale or

Otherwise Supplying of which would, in the absence of a license, infringe directly or indirectly a Licensed Patent, or (b) a component decoding and/or encoding device or software, the making, using, importing, Sale, or supplying of which would, in the absence of a license, infringe directly or indirectly a Licensed Patent, that is Sold or Otherwise Supplied directly to an End User.

19. Appendix B of the AAC PLA specifies the royalties due ("License Fees") depending on the type of device in which AAC is implemented. For "Licensed Products (Other than PC Software)," as defined in the AAC PLA, Haier as the licensee is required to pay a per-unit fee. For example, for "Consumer Products," as defined in the AAC PLA, that per-unit fee decreases as the sales volume increases, and resets annually ("Standard Rates"). The Standard Rates for these products range from $0.98 per unit for the first 500,000 units sold within a year to $0.15 per unit for each unit over 50 million sold within a year.

20. Section 1.7 of the AAC PLA defines the effective date of the AAC PLA as "the date on which [the AAC PLA] is executed by Via."

21. Section 2.3.1 of the AAC PLA makes clear that the AAC License does not grant Haier the right to use the licensed patents in any product other than in Licensed Products for which License Fees have been paid.

22. Section 4.2 of the AAC PLA requires Haier to provide Quarterly Reports within 30 days after the end of every calendar quarter following the effective date of the AAC PLA, which reports must include, among other things, the quantity and description of Licensed Products sold or otherwise supplied pursuant to the AAC PLA by Haier and/or its designated affiliates during the quarter.

23. Section 4.3 of the AAC PLA requires Haier to pay License Fees within 15 days after its Quarterly Reports are due. Section 4.3.1 provides that Haier may elect to defer payments until the following quarter, so long as the amount due for the quarter is less than $25,000 and the election is not made "more than once every other calendar quarter." In addition, Section 4.5.4 of the AAC PLA specifies that late payments (defined as those "received more than 30 days after becoming due") shall bear interest at the statutory rate of 10% per year or the highest rate permitted under applicable law, whichever is lower, compounded monthly. Section

4.5.5 of the AAC PLA provides that "[t]ime is of the essence with respect to all payments required hereunder."

24. Section 4.3.2 of the AAC PLA provides that if Haier sells or otherwise supplies products for resale to a customer who is also a licensee with Via ("Other Licensee"), Haier may agree with the Other Licensee that the Other Licensee will report and pay royalties on those products under the Other Licensee's licensing agreement with Via, instead of Haier reporting and paying such royalties under the AAC PLA. Section 4.3.2 requires both Haier and the Other Licensee to provide written notice to Via of such an agreement prior to the Other Licensee initiating such reporting and payment. Section 4.3.2 also provides that Haier remains responsible for License Fees on such products if the Other Licensee fails to report and pay License Fees that are due.

25. Section 4.3.4 of the AAC PLA provides that Haier must "consolidate all reports and payments required hereunder to include reporting and payment of License Fees due with regard to" Haier and all of its Designated Affiliates.

26. Section 4.6.6 of the AAC PLA provides that, no later than 30 days following the effective date of the AAC PLA, Haier is obligated to provide Via a written report similar to the Quarterly Reports in form and content concerning its Past Practice, together with payment for royalties and interest thereon, compounded monthly at the statutory rate of 10% or the highest rate permitted under applicable law, whichever is lower.

27. Section 4.7 of the AAC PLA requires that Haier "keep true, correct, and complete books and records of all sales, licenses, leases, uses, returns, disposals, or other transfers of Licensed Products under this Agreement for at least five years from the date of their creation." This section also gives Via the right to "select an independent and professionally licensed accountant ('Auditor') to audit, inspect and make abstracts of such books and records, at [Haier's] facility (or elsewhere as determined by the Auditor) as necessary to verify their accuracy and that of all other written reports and statements provided for herein, and verify or determine fees paid or payable under this Agreement ('Audit')."

28. Section 4.7 of the AAC PLA further provides that "[i]f the Audit shows an

underpayment, then [Haier] shall immediately pay the amounts due, plus accrued interest, plus the cost of the Audit if applicable, after receiving notice of the results of the applicable Audit. [Haier] will pay the cost of the Audit if, for the period audited, an underpayment of five percent or more is found, based on and compared to payments or reports received by Via prior to Via's notice informing [Haier] of the Audit."

29. Section 6.1 of the AAC PLA provides that the "Agreement shall commence on the Effective Date and continue thereafter for a period of five years" unless terminated earlier pursuant to Section 6, and grants Haier the option to renew the AAC PLA for an additional five year period, subject to certain conditions.

30. Section 6.5.1 of the AAC PLA provides that "[u]pon expiration or termination of this Agreement, the payment date of all monies due and the reporting date of all Quarterly Reports shall automatically be accelerated so that they shall all become due, payable, and deliverable no later than thirty days after the effective date of expiration or termination of this Agreement."

31. Section 6.5.2 of the AAC PLA provides that "[a]ny expiration or termination of this Agreement . . . shall not relieve [Haier] of its obligation to account for and make payments pursuant to the terms of this Agreement for all Licensed Products Sold or Otherwise Supplied by [Haier] either prior or subsequent to the expiration or termination date."

32. Section 9.6 of the AAC PLA provides that "[n]o waiver of a breach committed by a Party in one instance shall constitute a waiver or permission to commit or continue breaches in other or like instances."

33. Section 9.9 of the AAC PLA provides that "[t]his Agreement shall be governed by, and construed in accordance with, the substantive law of the State of California." Section 9.9 also provides that "in any litigation arising out of the Agreement . . . the prevailing Party shall be entitled to recover from the other Party all costs and expenses incurred in that action, as well as any appeal therefrom, including all reasonable attorney's fees and costs."

**Haier's Failure To Submit Quarterly Reports and Pay License Fees**

34. The AAC PLA requires Haier to submit Quarterly Reports to account for

1  its sales in the previous quarter.  Beginning in the second quarter of 2013, Haier stopped
2  submitting such Quarterly Reports.  Because only Haier will have accurate figures for Haier's
3  sales of products containing AAC Technology, these reports provide critical information to Via.
4  Each of Haier's Quarterly Reports under the AAC PLA became due thirty days after the end of
5  the quarter covered by the report.  The first missing Quarterly Report is for the April 1, 2013
6  through June 30, 2013 reporting period, and was due to Via by July 30, 2013.  As of the time of
7  the filing of this action, Haier has failed to provide Quarterly Reports for that quarter or the next
8  15 consecutive quarters.  Haier also did not pay License Fees for any sales made during the 16
9  quarters for which it did not submit a Quarterly Report.

10         35.    Haier also failed to fulfill its obligations under the AAC PLA for the only
11  two quarters for which Haier did submit Quarterly Reports to Via—the last quarter of 2012 and
12  the first quarter of 2013.  Although Haier reported no royalty-bearing sales for these quarters,
13  upon information and belief, Haier did make sales during these quarters for which it owes, and
14  has failed to pay, License Fees to Via.

15         36.    Haier also failed to fulfil its contractual obligations concerning Past
16  Practice sales.  Section 4.6.6 of the AAC PLA required Haier to provide Via—within 30 days
17  following the Effective Date—a written report identifying all Past Practice sales, along with
18  payment for royalties and interest thereon, but Haier failed to do so.  Haier did not provide any
19  information concerning its Past Practice, and to date, Haier has not fulfilled its obligation to pay
20  royalties (or interest thereon) on its Past Practice sales.  Pursuant to Section 4.7 of the AAC PLA,
21  underreported Past Practice sales will become due again following the results of the Audit.

22              **Via's Efforts to Obtain Haier's Missing Quarterly Reports**

23         37.    Via sent Haier reminders ahead of each Quarterly Report coming due, as
24  well as notifications when Haier failed to provide a Quarterly Report.  On or about September
25  29, 2015, a Via Compliance Analyst, Khajal Cooper, sent an email to Mark Lee, a Haier
26  employee who had been Via's point of contact at Haier, identifying the missing Quarterly
27  Reports, requesting that Haier submit those, and providing a link where the reports could be
28  uploaded.  When this email was returned as undeliverable, Mr. Cooper called Haier and was

1  informed that Mr. Lee was no longer employed by Haier, and that Ken Ayukawa was now the
2  appropriate reporting contact.  That same day, September 29, 2015, Mr. Cooper sent an email to
3  Mr. Ayukawa with the same detailed information regarding Haier's failure to abide by its
4  contractual obligations.  During the next eight months, Mr. Cooper wrote to Mr. Ayukawa on
5  five more occasions—on October 19, 2015, November 9, 2015, November 20, 2015, March 10,
6  2016, and May 18, 2016—to request that Haier provide Via with the outstanding Quarterly
7  Reports.  Mr. Ayukawa failed to respond to any of the emails, and despite clear instructions on
8  how to submit the missing reports, Haier did not submit a single missing report.  Haier continued
9  to withhold Quarterly Reports as they became due, and the list of outstanding reports grew.  Via
10 also called Haier's main number on multiple occasions.  Each time, the Haier employee who
11 answered the telephone refused to transfer the call to the appropriate person.

12        38.     On or about October 20, 2015, Mr. Kevin He from the law firm of
13 Troutman Sanders LLP, called Via purporting to represent Haier, and requested a copy of the
14 AAC PLA.  That same day, Mr. Cooper provided a copy of the AAC PLA to Mr. Ayukawa, and
15 emailed both Mr. Ayukawa and Mr. He to tell them that the AAC PLA had been provided
16 directly to Mr. Ayukawa, given the confidential nature of the document.  On or about May 23,
17 2016, Mr. Cooper spoke with Mr. He by telephone regarding the missing reports, and, after being
18 advised that Mr. He was the appropriate contact, followed up on this telephone call with an email
19 to Mr. He explaining Haier's contractual obligation to submit the outstanding Quarterly Reports
20 and providing instructions on how to submit them.  Haier made no effort to submit its missing
21 Quarterly Reports following these communications.

22        **Haier's Lack of Cooperation and Failure to Allow an Audit of Its Books and Records**

23        39.     With Haier's failure to provide the missing Quarterly Reports and
24 continued refusal to submit new Quarterly Reports as they became due, on or about July 1, 2016,
25 Via sent Haier a letter invoking its right to audit Haier's books and records pursuant to Section
26 4.7 of the AAC PLA.  Via engaged Connor N Corporation ("Connor")—an independent,
27 certified public accounting firm—to conduct the Audit and determine what License Fees Haier
28 owed to Via under the AAC PLA.  Via's and Connor's repeated attempts over the course of

1  many months to schedule the Audit were met with more recalcitrance from Haier in violation of
2  its contractual commitments.
3        40.    Connor's Vice President, Edgar Ooms, first emailed Haier about
4  scheduling an Audit on July 7, 2016.  On July 8, Haier's Senior Counsel, Paul Colonna,
5  requested that Connor sign a non-disclosure agreement ("NDA") and a "certificate of insurance
6  naming Haier America as an additional insured."  Even though Mr. Ooms provided a standard
7  NDA for Haier's review on July 12, 2016, to date Haier has, without any explanation, neither
8  signed it, nor provided an alternative draft.  Haier has also refused to explain its peculiar request
9  for a "certificate of insurance" which, in any event, is not a condition to any audit under the AAC
10 PLA.
11       41.    Mr. Ooms and Mr. Colonna had an "introductory call" about the Audit on
12 July 25, 2016, during which Mr. Colonna agreed to send an update regarding the status of
13 Haier's review of the NDA draft.  Mr. Ooms emailed Mr. Colonna asking about the status of
14 Haier's review of the NDA without receiving a meaningful response on 12 separate dates:  July
15 20, 2016, July 30, 2016, August 8, 2016, August 23, 2016, August 29, 2016, September 7, 2016,
16 September 15, 2016, September 20, 2016, September 25, 2016, October 23, 2016, November 2,
17 2016, and November 21, 2016.  For example, between July 30 and October 23, Mr. Colonna
18 either ignored Mr. Ooms' emails (on July 30, August 23, August 29), or responded that an
19 unnamed person is "reviewing it at this time" (on August 9) and that "[t]he review of the
20 document is not complete" (on September 7), or that Mr. Colonna is "out of the office" (on
21 September 15 and again on September 20).  In or about November 2016, Michelangelo Troisi,
22 Haier's Vice President and General Counsel became Connor's point of contact in connection
23 with the Audit.  Mr. Ooms emailed Mr. Troisi on November 2, 12 and 21, seeking a response to
24 the multiple emails to Mr. Colonna that remained unanswered.
25       42.    On November 21, 2016, Mr. Ooms finally spoke with Mr. Troisi, and
26 proposed an audit planning call for November 29.  On the morning of November 29, Mr. Ooms
27 emailed Mr. Troisi asking for a confirmation that Haier representatives could still participate in
28 the call scheduled for that afternoon.  Mr. Ooms received no response and the call did not take

place. On December 1, Mr. Troisi emailed Mr. Ooms that the November 29 email went to his spam folder. On December 3, Mr. Troisi emailed Mr. Ooms that he "should be available next week" to reschedule the call, but would check with Justin Park, a Senior Director at Haier. When Mr. Ooms had still not heard back from Mr. Troisi ten days later, he sent yet another follow-up email on December 13. Finally, on December 21, 2016 Mr. Ooms from Connor spoke with Mr. Toisi and Mr. Park from Haier. As discussed on that call, on December 26, 2016, Mr. Ooms emailed Mr. Toisi and Mr. Park Connor's Document Request Letter ("DRL").

43. Despite multiple emails and telephone calls since July 2016, Connor has not received any documents from Haier, has not been able to conduct an on-site visit at Haier to pursue the Audit, and therefore has been unable to make any meaningful progress in its Audit. Connor initially requested documents on December 26, 2016, covering the period between September 18, 2012 and December 31, 2016, as well as sales prior to the effective date of the AAC PLA. After multiple failed attempts to schedule a phone call with Mr. Park, which included Mr. Park canceling an email invitation to speak on January 3 approximately 15 minutes before the scheduled call, Mr. Ooms finally reached Mr. Park on January 6, 2017. On this call, Haier agreed to provide initial documentation in response to the DRL by the end of the week of January 16, 2017. Haier did not provide any documents, and ignored Mr. Ooms' multiple follow-up emails about the documents sent on January 12, 24, and 27 and on February 3. As of the date of this filing, Haier has not provided a single document to Connor.

44. Haier has been similarly uncooperative in scheduling Connor's on-site visit, in violation of its contractual obligations. During the call on January 6, 2017, Mr. Park agreed that Connor would conduct on-site fieldwork at Haier's offices on or about February 6, 2017. A Connor team made travel arrangements for the visit, of which Mr. Park was informed in a January 12 email from Mr. Ooms. Mr. Ooms continued to inquire about the outstanding initial documentation Haier had agreed to provide in response to Connor's DRL and to remind Haier of the upcoming on-site fieldwork in emails to Mr. Park sent on January 12, 24, and 27. Neither Mr. Park, nor anyone else at Haier responded to any of those emails. Then, on February 1, just days before the planned on-site fieldwork, Haier emailed Connor cancelling the visit, and, to

1 date, has expressed no interest in rescheduling.

2     45. Unable to secure Haier's cooperation despite numerous requests in the course of eighteen months, Connor sought to involve Via. Via emailed Haier on March 8, 2017 requesting Haier's cooperation in the Audit, and followed up with a telephone call to Mr. Park soon thereafter. Mr. Park did not answer or return the call, nor did he respond to the email. No one else at Haier has reached out to Via in connection with the now 16 missing Quarterly Reports or the Audit Connor has been trying to conduct for the last ten months.

    46. With the number of missing Quarterly Reports continuing to grow, and unable to obtain Haier's cooperation with the Audit authorized by the AAC PLA, on April 17, 2017, Via sent Haier a letter providing notice that Haier was in material breach of the AAC PLA. The letter requested Haier to comply with its reporting and Audit obligations under the AAC PLA, and to cure its material breach within 30 days. This letter is attached as Exhibit B. Haier has not responded to the letter.

## FIRST CAUSE OF ACTION

### (Breach of Contract - Damages)

    47. Via incorporates by reference each of the allegations in paragraphs 1 through 46 of this Complaint as if fully set forth herein.

    48. Via and Haier entered into the AAC PLA on September 18, 2012.

    49. The AAC PLA is a valid and enforceable contract and supported by adequate, mutual consideration.

    50. Via has performed each and every one of its material obligations under the AAC PLA.

    51. Haier has breached the AAC PLA by failing (i) to provide accurate and timely Quarterly Reports and (ii) to pay proper License Fees, interest and audit-related expenses, as provided in the AAC PLA.

    52. Haier has also breached the AAC PLA by failing to provide the Auditor with its books and records, as it is obligated to do under AAC PLA.

53. Via has been damaged by Haier's breach of contract in an amount to be determined at the trial of this matter.

54. Via is further entitled to costs and expenses incurred in this action, including attorneys' fees.

## SECOND CAUSE OF ACTION

### (Breach of Contract - Specific Performance)

55. Via incorporates by reference each of the allegations in paragraphs 1 through 46 of this Complaint as if fully set forth herein.

56. Via and Haier entered into the AAC PLA on September 18, 2012.

57. The AAC PLA is a valid and enforceable contract and supported by adequate, mutual consideration.

58. Haier has breached the AAC PLA by failing to provide accurate and timely Quarterly Reports or to pay proper License Fees, interest and audit-related expenses, as provided in the AAC PLA.

59. Haier has also breached the AAC PLA by failing to provide the Auditor with its books and records, as it is obligated to do under AAC PLA.

60. Via reminded Haier of its obligations under Section 4.2 of the AAC PLA on numerous occasions, including in the Final Notice of Material Default that Via sent to Haier on or about April 17, 2017.

61. Via hereby affirms the AAC PLA and seeks Haier's performance thereunder, including compliance with Haier's reporting obligations under Section 4.2 of the AAC PLA.

62. The terms of the AAC PLA are sufficiently definite to enable the Court to specifically enforce them.

63. Haier has refused to issue Quarterly Reports to Via, and without these Quarterly Reports, Via is unable to ascertain the true amount of damages that would afford Via complete and adequate relief.

64. Via thus has no adequate legal remedy in that the damages caused by

Haier's breach of the AAC PLA, if awarded, cannot be properly ascertained.

65. Based on the foregoing, Via seeks a judgment from this Court ordering that Haier specifically perform its contractual obligations and issue Quarterly Reports to Via covering the time period between the second quarter of 2013 through to the present.

66. Via also seeks a judgment ordering Haier to specifically perform its contractual obligations and permit an Audit of its books and records.

## DEMAND FOR JURY TRIAL

67. Please take notice that Plaintiff Via demands a trial by jury in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff VIA LICENSING CORPORATION prays for the following relief:

A. For damages for breach of contract in an amount to be determined at trial, but no less than the jurisdictional amount of this Count;

B. For an order for specific performance of the quarterly reporting obligations under the AAC PLA, Section 4.2, and for Haier to permit an Audit of its books and records under AAC PLA, Section 4.7;

C. For attorneys' fees incurred in connection with this action, pursuant to the AAC PLA, Section 9.9;

D. For contractual interest as provided under the AAC PLA, Section 4.5.3;

E. For Audit expenses as provided under the AAC PLA, Section 4.7;

F. For general, special, and consequential damages according to proof at trial;

G. For prejudgment interest to the extent allowed by law; and

H. For such other and further relief as the Court deems just and proper.

Dated:  June 15, 2017

    /s/  Laura Kabler Oswell

Laura Kabler Oswell (SBN 241281)
SULLIVAN & CROMWELL LLP
1870 Embarcadero Road
Palo Alto, California 94303
Telephone:  (650) 461-5600
Facsimile:  (650) 461-5700

Garrard R. Beeney
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone:  (212) 558-4000
Facsimile:  (212)558-3588

Antonia Stamenova-Dancheva (SBN 268292)
SULLIVAN & CROMWELL LLP
1888 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 712-6600
Facsimile: (310) 712-8800

*Attorneys for Plaintiff VIA LICENSING CORPORATION*